# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **VIRGINIA VILLAREAL, et al.,** | ) | |
| **Plaintiffs,** | ) | **Case No. 07 C 1656** |
| | ) | |
| **v.** | ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |
| **EL CHILE, INC., et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are plaintiffs/counterdefendants' Motions under Rule 12(b)(6) and 12(b)(1) to Dismiss Defendants' Counterclaims [dkt 82] and memorandum of law in support ("Pl.'s Mem." [dkt 84]). Defendants have filed a Response to Motions to Strike Counterclaims [dkt 91], and plaintiffs/counterdefendants have filed a Reply [dkt 92]. The court heard oral argument on the motions. For the reasons below, the motions are granted. Count I of defendants' counterclaim is dismissed with prejudice, and Count II of defendants' counterclaim is dismissed without prejudice.

## BACKGROUND

In December 2006, plaintiff Virginia Villareal filed a putative class action against Condesa, Inc., in the Circuit Court of Cook County, Illinois, alleging a violation of the overtime wage provisions of the Illinois Minimum Wage Law ("IMWL"). (*See* Pls.' Mem. at 2-3.) Villareal also individually alleged a violation of the federal Fair Labor Standards Act ("FLSA"). (*Id.* at 3.)

A First Amended Complaint added several named plaintiffs, dropped Condesa, Inc., as a defendant, and named as defendants El Chile, Inc., Caleta, Inc., Caletilla, Inc., and Roqueta, Inc. (the

1

"Corporate Defendants").  (*See* Pls. Mem. at 2-3; *see also* First Am. Compl., attached to Notice of Removal.)  [Dkt 1.]  The First Amended Complaint also added a claim on behalf of several individual plaintiffs for violations of the minimum wage provisions of the IMWL.  (*Id.*)

On March 23, 2007, the Corporate Defendants removed the case to federal court on the basis of federal question jurisdiction over the FLSA claim and supplemental jurisdiction over the state law claims.  (Notice of Removal ¶ 3.)  [Dkt 1.]  After the removal, Plaintiffs filed a Second Amended Complaint, adding two named plaintiffs and deleting one.  [Dkt 7.]  The Corporate Defendants answered the Second Amended Complaint and did not assert any counterclaims.  [Dkt 13.]

In January 2008, the parties then involved in the case consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636©.  [Dkt 38.]  A month later, plaintiffs filed a Third Amended Complaint, which is currently pending.  (Third Am. Compl.)  [Dkt 43.]  That complaint names additional plaintiffs, for a total of thirty-six.  It also names two additional defendants, Timoteo Manjarrez and Maria Estela Manjarrez (the "Individual Defendants").[1]  Count I of the Third Amended Complaint alleges claims under the IMWL on behalf of plaintiffs and similarly situated employees for defendants' alleged failure to pay overtime wages.  (*Id.* at 8.)  Count II alleges that defendants failed to pay overtime wages to the named plaintiffs in violation of the FLSA.  (*Id.* at 10.)  Count III alleges defendants failed to pay minimum wages to plaintiffs Jorge Garcia, Jorge Garcia Martinez, Pedro Hernandez, and Israel Filipe Sanchez in violation of the IMWL. (*Id.* at 11.)

The Corporate and Individual Defendants filed answers and affirmative defenses to the Third Amended Complaint, and both sets of defendants filed the same two counterclaims. (Answer,

---

[1]  The parties added to the case by the Third Amended Complaint consented to the jurisdiction of the Magistrate Judge in December 2008.  [Dkts 98-100.]

Affirmative Defenses, & Countercls. of Corporate Dfs. [dkt 69]; Answer, Affirmative Defenses, & Countercls. of Individual Dfs. [dkt 81].) The first counterclaim, the "indemnity counterclaim," is brought against plaintiffs Rosa Camarena, Jorge Garcia, Tomas Jacinto, Javier Jimenez, Bernardo Linares, Marco Ocampo, and Pedro Magos. Defendants allege that those seven plaintiffs were employed in "bona fide executive and administrative capacities" and "exercised control over hirings and firings, work schedules, . . . and the number of hours worked by Plaintiffs," and thus their "actions . . . provide the factual basis for vicarious liability of [defendants] as alleged in the Third Amended Complaint." (Counterclaim Count I ¶¶ 2-3.) Defendants claim that those plaintiffs owe defendants implied indemnity under Illinois law should plaintiffs prevail on any claim brought under the Third Amended Complaint. (*Id*. ¶ 4.)

The second counterclaim, the "duty of loyalty counterclaim," is asserted by the Individual Defendants and defendant Roqueta, Inc., against plaintiffs Reynalda Ruiz, Marta Sanchez, and Cordelia Reyes. It alleges that those plaintiffs breached the duty of loyalty they owe their employer under Illinois law. Specifically, the Individual Defendants and defendant Roqueta, Inc., allege that "[w]ithin the month or so preceding the filing of this Counterclaim," those plaintiffs breached their duties of loyalty "by telling customers who enter the restaurant that the food and the service is poor, that the owners of the restaurant abuse the employees; by failing to wait on customers or failing to wait on customers in a timely fashion; by failing to take telephone orders; and by soliciting the signatures of customers for purposes unknown to Defendants, but which solicitations have caused discomfort to customers." (Counterclaim Count II ¶ 3.) The defendants allege those plaintiffs took these actions "willfully and maliciously for the purpose of harming Defendant-counterclaimant Roqueta, Inc.'s business revenue and reputation." (*Id.* ¶ 6.)

For simplicity, this opinion will refer generally to the parties alleging the counterclaims as "Defendants," and the parties who are the subject of the counterclaims as "Plaintiffs," even though the counterclaims are not asserted against all of the plaintiffs and the duty of loyalty counterclaim is not asserted on behalf of all the defendants.

## LEGAL STANDARD

Plaintiffs have moved to dismiss the indemnity counterclaim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Pls.' Mem. at 2.) They move to dismiss the duty of loyalty counterclaim under Rule 12(b)(1) for lack of subject matter jurisdiction or, alternatively, under Rule 12(b)(6) for failure to state a claim. (*Id.*)

> A complaint will withstand a motion to dismiss [under Rule 12(b)(6)] if it provides a short and plain statement of the claim showing that the pleader is entitled to relief that is also sufficient to provide the defendant with fair notice of the claim and its basis. In order to demonstrate that he is entitled to relief, however, the pleader must show through his allegations that it is plausible, rather than merely speculative, that he is entitled to relief.

*INEOS Polymers, Inc. v. BASF Catalysts*, 553 F.3d 491, 497 (7th Cir. 13, 2009) (citations and quotations omitted). In ruling on a motion to dismiss for failure to state a claim, the court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Id*.

Where, as here, the motion to dismiss under Rule 12(b)(1) contends that the allegations are facially insufficient to show jurisdiction, the standard applicable to a motion to dismiss mirrors that applied under Rule 12(b)(6). *Royal Towing, Inc. v. City of Harvey*, 350 F. Supp. 2d 750, 752 (N.D. Ill. 2004); *see also Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).

**DISCUSSION**

I.     <u>Count I:  The Indemnity Counterclaim</u>

     1.     <u>With respect to Plaintiffs' FLSA Claim</u>.

Plaintiffs argue that the indemnity counterclaim to their FLSA claim is preempted by the federal policy underlying the FLSA.  (Pls.' Mem. at 5-6.)  Defendants respond that federal common law recognizes claims for indemnity and contribution, and that the deterrence and compensatory objectives of the FLSA would be undermined if their indemnity counterclaim is dismissed. (Resp. at 3-8.)  Defendants contend that the courts that have dismissed similar claims for indemnity and contribution are in error.  (*Id.*)[2]

While the Seventh Circuit has not yet addressed the issue, other courts of appeals have rejected claims seeking indemnity or contribution for FLSA liability.  *See, e.g., LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986) (affirming dismissal of employer's cross-claim against supervisory personnel for indemnity of plaintiffs' claims under FLSA, and stating, "No cause of action for indemnity by an employer against its employees who violate the Act appears in the statute, nor in forty years of its existence has the Act been construed to incorporate such a theory.")  Defendants have not presented, and this court's research has not disclosed, any

---

     [2]  Defendants did not include a claim for contribution in their counterclaims. (*See* Answer, Affirmative Defenses, & Countercls. of Corporate Defs.; Answer, Affirmative Defenses, & Countercls. of Individual Defs.) In a footnote of their Response, Defendants argue "in the alternative that contribution should be available to them to avoid seeking leave to amend on that basis, because indemnity and contribution are similar claims up to the point of proportionality of liability and damages."  (Resp. at 3 n.1.)  Plaintiffs address that unpleaded claim, arguing that a contribution counterclaim is not permitted by the FLSA.  (Reply at 3, 5-6.)  Because any contribution counterclaim would suffer the same fate as Defendants' indemnity counterclaim, this opinion will consider Defendants' "claim" for contribution although Defendants have not properly pleaded such a counterclaim.

decision by a federal court to date recognizing a claim for indemnity or contribution by an employer against an employee in the employee's action under the FLSA.

In *LeCompte*, the Fifth Circuit stated that the district court had properly dismissed the indemnity claim notwithstanding the employer's evidence that the supervisory personnel regularly ignored the employer's policy prohibiting unauthorized overtime. *Id*. at 1264. The court explained that a claim for indemnity would frustrate Congress' purpose in enacting the FLSA, since an employer who believed that any violation of the statute's overtime or minimum wage provisions could be recovered from its employees would have a diminished incentive to comply with the statute. *Id.* at 1264. "To engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution, would undermine employers' incentive to abide by the Act, and would differentiate among employees entitled to receive overtime compensation in a way which does not otherwise exist in the statute." *Id.* The court also rejected the application of state-law indemnity principles, stating that creating a state-law-based indemnity remedy on behalf of employers would not serve the purpose of national minimum standards and would diminish employer incentive to comply with the FLSA, as well as deprive the supervisory employees of the overtime compensation to which they are entitled under the FLSA. *Id*.

The other courts of appeals that have considered the issue have agreed with the Fifth Circuit's decision in *LeCompte*. *See Lyle v. Food Lion*, 954 F.2d 984, 987 (4th Cir. 1992) (affirming dismissal of employer's counterclaim and third-party complaint for indemnity against plaintiff-supervisor for plaintiffs' FLSA claims); *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir. 1992) (holding employer's third-party complaint seeking indemnity from employee for alleged FLSA violations was preempted); *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 144 (2d

Cir. 1999) (affirming dismissal of corporation chairman's claims for contribution and indemnification against his co-owner and corporation's manager and vice president).

Defendants argue that the court in *LeCompte* did not analyze the purpose of the FLSA in relation to indemnity, and that to preclude such a claim would allow "wrongdoers to go scot-free," thus providing no incentive to supervisory employees like plaintiffs, who have authority to give raises and set work hours, to avoid violating the FLSA. (Resp. at 3.) However the decisions discussed above explicitly considered – and rejected – the very policy arguments stressed by Defendants here. *See, e.g., LeCompte*, 780 F.2d at 1264.

None of the authorities cited by Defendants as supporting their position addressed the issue of indemnity or contribution for FLSA violations.[3] In *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001), the court observed that a supervisor who uses his authority over employees to violate their rights under the FLSA may be liable to those employees (although, in that case, the claim was barred by the Eleventh Amendment). There is no suggestion in that opinion, however, that the Seventh Circuit would permit an indemnification or contribution claim to be brought by the *employer* against the supervisor. Likewise, the legislative history of the FLSA cited by Defendants does not support such a claim.[4] *See Herman*, 172 F.3d at 144 (noting that the text of the FLSA

___

[3] Defendants cite *Ball v. City of Chicago*, 2 F.3d 752 (7th Cir. 1993) (discussing deterrent and compensatory objectives of the law when reviewing dismissal of § 1983 action based on plaintiffs' failure to prosecute claims); *In re Olympia Brewing Co. Sec. Litig.*, 674 F. Supp. 597 (N.D. Ill. 1987) (discussing relationship between indemnity and contribution claims in the context of the Securities Exchange Acts of 1933 and 1934); and *Premier Capital Mgmt., LLC v. Cohen*, No. 02 C 5368, 2005 WL 1564926 (N.D. Ill. July 1, 2005) (discussing the right of contribution in the Securities Act of 1933).

[4] Defendants quote from the Committee Report on the bill that became the FLSA. (*See* Resp. at 5, incorrectly citing the Congressional Joint Hearings.) The Report expressed a need "to correct, and as rapidly as possible to eliminate," "labor conditions detrimental to the maintenance of the

makes no provision for contribution or indemnification and the Act's legislative history is silent on a right to contribution or indemnification).

Other cases cited by Defendants demonstrate the federal courts' refusal to recognize a federal common law right to indemnity or contribution except in limited circumstances. (Defs.' Resp. at 7, citing, *e.g*, *Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77 (1981) (holding employer had no right of contribution under Equal Pay Act, Title VII, or federal common law against unions that allegedly bore at least partial responsibility for statutory violations), and *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312 (7th Cir. 1997) (holding that Illinois Construction Contract Indemnification for Negligence Act invalidates indemnity provision in contract between general contractor and Postal Service).)

In light of the consistent holdings by the courts that have considered the issue, Defendants' counterclaim for indemnity (or contribution) with respect to Plaintiffs' FLSA claim is dismissed with prejudice.

2.   <u>With respect to Plaintiffs' IMWL Claim</u>.

Plaintiffs argue that the same policies that preclude Defendants' indemnity (and contribution) counterclaim in connection with FLSA liability also preclude such a claim in connection with liability under the IMWL. Plaintiffs also contend that if such a claim could be made, Defendants have failed to allege conduct that would make Plaintiffs derivatively liable for the IMWL claims under a quasi-contractual theory of implied indemnity. Defendants urge that Illinois law recognizes contribution claims by employers under the IMWL, and that they have sufficiently alleged the

---

minimum standard of living necessary for health, efficiency and general well-being." H.R. Conf. Rep. No. 75-2738, at 28 (1938). Nothing in that statement supports Defendants' position here.

"qualitatively different" conduct necessary to give rise to an implied indemnity claim for any liability they may have on Plaintiffs' IMWL claim.

When dealing with a claim under Illinois law, a federal court must apply the law of Illinois as the Illinois Supreme Court would apply it. *Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100 (7th Cir. 2003). In the absence of an Illinois Supreme Court decision on point, the federal court must estimate how the Illinois Supreme Court would rule, giving great weight to state appellate court decisions unless there are persuasive indications that the Supreme Court would decide differently. *Id*.

Defendants present no authority supporting their position that Illinois law recognizes employers' claims for contribution (or indemnity) for liability under the IMWL. The single case Defendants cite for that proposition, *Wenthold v. AT&T Technologies, Inc.*, 491 N. E. 2d 1263 (Ill. App. 1986), provides no support. In that opinion, which dealt with a motion for class certification under the IMWL, the court observed only that the employer had filed a third-party claim against the union for contribution, but that claim was still being challenged in the trial court. *Id*. at 1268. Defendants have not submitted anything to the court in response to a question during oral argument regarding the fate of that contribution claim in *Wenthold*.

In the absence of a decision on point regarding the IMWL, Defendants argue that Illinois law generally recognizes a common law right of implied indemnity, citing *Kerschner v. Weiss & Co.*, 667 N.E.2d 1351 (Ill. App. 1996), In *Kerschner*, the court set out the elements of a claim for implied indemnity based on quasi-contractual principles, although not in the context of the IMWL.

The court concludes that Illinois law would follow federal law in not permitting an employer's claim for indemnity or contribution in this situation. "Illinois courts have held that in

the absence of Illinois decisions dealing with a particular labor law issue, federal decisions dealing with a substantially similar law, while not controlling, may be helpful and relevant." *Bernardi v. Village of North Pekin*, 482 N.E.2d 101, 102 (Ill. App. 1985) (citations omitted). Federal courts have followed that principle in construing the IMWL. *See, e.g., O'Brien v. Encotech Constr. Servs., Inc.*, 183 F. Supp. 2d 1047, 1050 (N.D. Ill. Jan. 23, 2002) (citing *Bernardi* and applying the federal courts' interpretation of FLSA to issue under IMWL). Like the FLSA, Illinois' minimum wage laws embody a public policy providing "a floor, both as to amount and frequency, below which parties are precluding from contracting with respect to payment for labor services." *O'Brien*, 183 F. Supp. 2d at 1049. As with the FLSA, the IMWL's statutory goals would be undermined by diminishing the employer's compliance incentives if an employer were permitted to seek indemnity or contribution from its employees for statutory violations.

Defendants' counterclaim for indemnity (or for contribution) with respect to Plaintiffs' IMWL claims is dismissed with prejudice.

## II.    Count II:  The Duty of Loyalty Counterclaim

Plaintiffs argue that the duty of loyalty counterclaim should be dismissed for a number of reasons:  First, the court lacks supplemental jurisdiction over the counterclaim because it does not share a common nucleus of operative fact with Plaintiffs' claims.  Second, the allegations do not give rise to a breach of the duty of loyalty under Illinois law.  Third, the court lacks jurisdiction because the conduct alleged is protected under the National Labor Relations Act ("NLRA") and Plaintiffs have filed an unfair labor practice charge with the National Labor Relations Board ("NLRB").  Defendants dispute each of these arguments.

When a federal court has original jurisdiction over an action, the court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," even if those claims "involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Section 1367(a) codifies the principle that federal and state law claims are part of the same case or controversy if they derive from a common nucleus of operative fact. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997). "A loose factual connection between the claims is generally sufficient" to satisfy the common nucleus of operative fact test *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (citations omitted).[5]

The duty of loyalty counterclaim does not arise from the same common nucleus of operative fact as Plaintiffs' overtime and minimum wage claims under the FLSA and the IMWL. Plaintiffs allege Defendants have failed to pay Plaintiffs overtime and minimum wages as required by statute. Defendants allege that certain Plaintiffs told restaurant customers that the food and service is poor and that the owners abuse their employees, failed to wait on customers or take orders in a timely fashion or at all, and solicited customer signatures for unknown purposes. The only connection between Plaintiffs' claims and the counterclaim is the parties' employment relationship.

The parties do not point to any Seventh Circuit decisions addressing the issue, but other courts have held that an employment relationship alone is insufficient in an FLSA case to provide a common nucleus of operative fact establishing supplemental jurisdiction over the employer's state law claims against the employee. *See, e.g.*, *Torres v. Gristede's Operating Corp.*, No. 04 C 3316,

---

[5] "The somewhat narrower 'same transaction or occurrence' test that was used before the adoption of § 1367 no longer governs." *Korseko*, 503 F.3d at 614.

2008 WL 4054417, *11-14 (S.D.N.Y. Aug. 28, 2008) (dismissing employer's faithless servant counterclaim as not arising out of a common nucleus of operative fact with employees' FLSA and New York Labor Law overtime claims, where parties' employment relationship was "the sole fact" connecting the claims); *Wilhelm v. TLC Lawn Care, Inc.*, No. 07 C 2465, 2008 WL 640733, *3 (D. Kan. Mar. 6, 2008) (dismissing employer's counterclaims for misappropriation of trade secrets, breach of duty of loyalty, civil conspiracy, breach of fiduciary duty, and accounting of profits as not arising out of a common nucleus of operative fact with employees' FLSA and Kansas statutory overtime claims, and finding the employer-employee relationship insufficient to support supplemental jurisdiction).

In *Lyon v. Whisman*, 45 F.3d 758, 762-64 (3d Cir. 1995), the Third Circuit *sua sponte* vacated a judgment for a plaintiff-employee on state law tort and contract claims, holding that the employment relationship was not a sufficient nexus between those claims and her FLSA claim to provide supplemental jurisdiction. Although the court noted that *Prakash v. American Univ.*, 727 F.2d 1174 (D.C.Cir. 1984), suggested supplemental jurisdiction might extend to an FLSA plaintiff's state law contract claims against her employer, the Third Circuit disagreed with such a broad reading. *Lyon*, 45 F.3d at 762-63. Furthermore, in this case, unlike *Prakash*, it is the employer-defendant that seeks to bring a tort claim against some but not all of the FLSA plaintiffs. As in *Lyon*, "there is so little overlap between the evidence relevant to the FLSA and state claims that there is no 'common nucleus of operative fact' justifying supplemental jurisdiction over the state law claims." *Id.* at 763.

Defendants contend a common nucleus of fact exists because the willful misconduct forming the basis of their duty of loyalty counterclaim demonstrates Plaintiffs' "bias toward the Defendants"

and as a result is "highly relevant to Plaintiffs' credibility in making allegations of FLSA and IMWL violations."  (Resp. at 10.)   Whether or not evidence of ill-will between the parties might be admissible to attack Plaintiffs' credibility (a question that is not decided here),  it does not bring every dispute between them within the federal court's supplemental jurisdiction.[6]

Alternatively, assuming, *arguendo*, that supplemental jurisdiction could extend over the duty of loyalty counterclaim consistent with Article III, the court declines to exercise such jurisdiction. The district court may decline to exercise supplemental jurisdiction over a claim for a number of reasons, including when "the claim raises a novel or complex issue of State law" or  "substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(1) and (2).

Plaintiffs argue that Defendants have failed to state a claim for breach of the duty of loyalty under Illinois law which, they argue, must involve "use of one's relationship with the employer for personal pecuniary gain and self-dealing."  (Mem. at 9; *see also* Reply at 9.)  Plaintiffs rely on *Beltran v. Brentwood No. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 831-32 (N.D. Ill. 2006), where, after surveying Illinois law on the subject, the court held that Illinois law would not recognize a claim for breach of duty of loyalty against an employee who sleeps during work hours.  The court stated that  "sleeping on the job, like other forms of negligent or substandard job performance, is

---

  [6] The authorities cited by Defendants  do not address the issue of subject matter jurisdiction. For example*, Hughes v. McMenamon*, 379 F. Supp. 2d 75 (D. Mass. 2005), involved the application of res judicata. *McTigue v. City of Chicago*, 60 F.3d 381 (7th Cir. 1995)(abrogated on other grounds), affirmed dismissal of a discharged city employee's § 1983 action against the city.  *McCormick v. City of Chicago,* 230 F.3d 319 (7th Cir. 2000), held that a plaintiff's allegation of racial bias supported a claim for municipal liability. *U.S. v. Abel*, 469 U.S. 45 (1984) held that evidence of gang membership was admissible to show witness' possible bias toward defendant in bank robbery prosecution.

inherently dissimilar from the types of self-dealing scenarios that courts have recognized as forming the basis for viable breach-of-fiduciary-duty claims." *Id.* at 832. [7]

Defendants argue that only inconsistency with an employer's trust, not self-dealing, is required to state a claim for breach of the duty of loyalty under Illinois law. But Defendants do not point to any Illinois decisions recognizing such a claim for the acts they allege here.

Defendants' allegation that Plaintiffs acted maliciously and with intent to harm their employer might distinguish this case from *Beltran,* where the employer only claimed that the plaintiff slept when he should have been working. But whether Defendants' allegations state a claim under Illinois law is apparently a novel question that should ideally be addressed by the Illinois courts.

Furthermore, the FLSA claim here involves the relatively discrete issue of hours worked and wages paid, as does the IMWL claim. In contrast, the duty of loyalty counterclaim would require discovery different from and well beyond that, probably including discovery from customers and other witnesses who are not parties to the case. The counterclaim has the potential to predominate over the FLSA claim and significantly delay its resolution, which would be contrary to the FLSA's purpose.

Accordingly, the duty of loyalty counterclaim is dismissed without prejudice for lack of supplemental jurisdiction.[8]

---

[7] *Beltran* was filed as FLSA claim to which the defendant brought a counterclaim for breach of duty of loyalty. 426 F. Supp. 2d at 830. Apparently, the question of whether there was supplemental jurisdiction over the counterclaim was not raised. Instead, the court considered and dismissed the counterclaim as a matter of law under Fed. R. Civ. P. 12(b)(6).

[8] Plaintiffs also argue that the court lacks jurisdiction over the duty of loyalty counterclaim because the underlying conduct that is the subject of that counterclaim "amounts to collective activity for the

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motions to Dismiss are granted. Defendants' counterclaim for indemnity (Count I of the counterclaims of both the Corporate Defendants and of the Individual Defendants) is dismissed with prejudice. Defendants' counterclaim for breach of the duty of loyalty (Count II of the counterclaims of both the Corporate Defendants [dkt 69] and of the Individual Defendants [dkt 81]) is dismissed without prejudice.

IT IS SO ORDERED.

_Geraldine Soat Brown_
GERALDINE SOAT BROWN
United States Magistrate Judge

February 25, 2009

---

purposes of mutual aid and protection" and Plaintiffs have filed an unfair labor charge with the NLRB against Defendants (Mem. at 11.) Citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959), Plaintiffs argue that the court's jurisdiction is preempted and the matter is within the exclusive jurisdiction of the NLRB. (*Id.*) Defendants dispute the application of *Garmon* to their duty of loyalty counterclaim which, they argue, alleges "intentional harm." (Resp. at 12-13.)

The current record does not provide enough information about the facts underlying the counterclaim and the NLRB charges to determine whether the counterclaim is preempted with respect to all of the conduct alleged. Because the duty of loyalty count will be dismissed without prejudice for lack of supplemental jurisdiction, this opinion expresses no view on that issue.