UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIRGINIA VILLAREAL, et al., | No. 07 C 1656 |
| Plaintiffs, | |
| v. | Magistrate Judge Geraldine Soat Brown |
| EL CHILE, INC., et al., | |
| Defendants. | |

**MEMORANDUM OPINION**

At a hearing, Plaintiffs' Motion to Compel Defendants to Supplement Written Discovery, and to Answer Plaintiffs' Second Set of Interrogatories Nos. 1 and 3 ("Pls.' Mot. Compel") [dkt 148] was granted in part and denied in part, and Plaintiffs' Emergency Motion for Protective Order and for An Award of Attorneys' Fees and Costs ("Pls.' Prot. Order Mot.") [dkt 150] was granted in substantive part.[1] [Dkt. 159.] Because defendants' responses to the motions raised issues regarding the relationship between Rules 26(e) and 33(b) of the Federal Rules of Civil Procedure, and regarding the discoverability of plaintiffs' immigration status in this Fair Labor Standards Act case, this opinion is issued to set out the basis for those rulings.

---

[1] Plaintiffs' request for attorneys fees in conjunction with the motion for protective order was taken under advisement.

1

# BACKGROUND

This case involves a class claim for overtime pay under the Illinois Minimum Wage Law ("IMWL"), and individual claims for minimum wage pay under the IMWL and overtime pay under the federal Fair Labor Standards Act ("FLSA"). (Third Am. Compl.) [Dkt. 43.] Discovery has proceeded over two years and is drawing to a close. After unsuccessful efforts pursuant to Northern District of Illinois Local Rule 37.2 to resolve disputes regarding defendants' responses to Plaintiffs' Second Set of Interrogatories, plaintiffs moved to compel defendants' responses to two of the interrogatories.[2] (Pls.' Mot. Compel.) Plaintiffs also moved for a protective order barring defendants from taking any discovery about plaintiffs' immigration status. (Pls.' Prot. Order Mot.) Defendants responded to both motions. [Dkt 153, 155.] Plaintiffs replied [dkt 154, 156], oral argument on the motions was heard, and rulings were made in open court. This opinion sets out the reasons for those rulings.

# DISCUSSION

**I.      Plaintiffs' Motion to Compel**

Plaintiffs' Interrogatory No. 1 asked the defendants:

1.      Do you contend that during the three years prior to the Complaint being filed in this case to the present, each of the following Defendants:

    a.      El Chile, Inc.,
    b.      Caleta, Inc.,
    c.      Caletilla, Inc.,
    d.      and Roqueta Inc.

---

[2] Plaintiffs' motion to compel was denied as to other discovery requests and is not relevant to this opinion.

> maintained timekeeping records that complied with the Fair Labor Standards Act and the Illinois Minimum Wage Law. *See* 29 C.F.R. § 516.2 and 56 Ill. Admin. Code 210.700(f), respectively. If the answer to this interrogatory is yes, identify all such documents and state the time period that such compliant documents for each Defendant. [*sic*]

(Pls.' Mot. Compel, Ex. B at 1.) Subject to their objections, defendants responded to the interrogatory as follows:

> Defendants aver that such records were maintained at Roqueta, Inc. headquarters located at 2908 West 59th Street, Chicago, Illinois. These records were maintained by Rosa Camarena and Adela Salazar in the basement of that building and the basement of 2917 West 59th Street, both of which flooded in early 2004.
>
> Records maintained since the flood are in the possession of prior defense counsel. Defendants are unable to further identify the documents as prior defense counsel continues to withhold his file. Defendants have previously produced numerous timecards, books and other timekeeping records.

(*Id.* at 1-2.)

Plaintiffs complained that defendants' answer failed to state whether defendants contend that records were kept in compliance with the FLSA and IMWL. Plaintiffs also complained that defendants' failure to identify any documents amounted to a non-response. (Pls.' Mot. Compel at 2, 7.) In the pre-motion communication between the parties' counsel, defendants' attorney responded to plaintiffs' complaints with an e-mail, stating in pertinent part, "Based upon the information available to my corporate clients and our law firm, defendants do contend that they maintained documents in accordance with the recordkeeping requirements of the FLSA and the IMWL . . . ." (Defs.' Resp. Mot. Compel, Ex. 1.) Plaintiffs again requested a further response. (Pls.' Mot. Compel, Ex. D.) Defendants' counsel then sent another e-mail, stating in pertinent part:

> The only payroll records pursuant to statute were the notebook (the original of which will be brought today to the deposition, and copies of which were previously produced) and the time cards already produced. My client will swear to that today

3

and, if you want, we can put that in a written form. By the way it is one of your deposition topics."

(Defs.' Resp. Mot. Compel, Ex. 2.)

Plaintiffs argue on their motion that they are entitled to an interrogatory response specifically stating defendants' contention and identifying which documents defendants assert were kept in compliance with the statutes. (Pls.' Mot. Compel at 7-8.) Defendants, on the other hand, assert that their counsel's e-mails properly supplemented their response to Interrogatory No. 1 and that no further supplementation is necessary. (Defs.' Resp. Mot. Compel at 2.)

In their Second Set of Interrogatories, plaintiffs also sought to explore defendants' answer to Plaintiffs' Third Amended Complaint, in which defendants admitted, "The corporate Defendants, respectively, admit that certain of the Plaintiffs, respectively, were not paid by certain of the corporate Defendants, respectively, overtime pay at the rate of one and one half times their regular rate of pay for work in excess of 40 hours per week." (Answer to Third Am. Compl. ¶ 38.) [Dkt 69.] That answer was essentially repeated in defendants' response to Paragraph 41 of the Third Amended Complaint, which was in turn incorporated by reference in defendants' answers to Paragraphs 42 through 46. (*Id*. ¶¶ 41-46.)

Plaintiff's Interrogatory No. 3, therefore, asked:

3. With respect to Paragraphs 38, 41, 42, 43, 44, 45, and 46 of Defendants' Answer to Plaintiffs' Third Amended Complaint, identify by name the "certain Plaintiffs" who Defendants admit were not paid overtime by "certain of the corporate Defendants." For each such person, state:

    a.    the workweek they were not paid overtime;
    b.    which corporate Defendant failed to pay the Plaintiff overtime for each workweek;
    c.    the number of hours worked;
    d.    the person's regular rate of pay.

(Pls.' Mot. Compel, Ex. B. at 3.) Defendants responded to the interrogatory as follows:

> The referenced characterizations of "certain Plaintiffs" and "certain of the corporate Defendants" are characterizations made by prior defense counsel. Defendants are unable to determine at this time what prior defense counsel meant, as a matter of fact, by making those characterizations. Nor are defendants able to glean this information from prior defense counsel as prior defense counsel continues to withhold his file.

(*Id.*, Ex. B. at 3.) Unsatisfied with this response, plaintiffs requested a further answer. (*Id.*, Ex. D at 2.) Counsel for defendants responded by e-mail, saying in pertinent part:

> On the issue of the paragraphs in the Answer regarding "certain plaintiffs," my clients believe that the persons named in each such paragraph are the individuals referred to. Moreover, in re-reading the paragraph, it details the production of records to you in support of the answer, although the pleader also says there is a disagreement on the point. So what more can they say other than what is said in the referenced paragraphs of the Answer?

(Defs.' Resp. Mot. Compel, Ex 2.)

Plaintiffs maintain that defendants' initial answer and their counsel's subsequent e-mailed explanations do not fully respond to the interrogatory. (Pls.' Mot. Compel at 8.) Defendants insist, however, that their counsel's e-mailed statement – that the reference to "certain plaintiffs" in their Answer meant "the individuals referred to in those numbered paragraphs" – is a sufficient response and that no further supplementation is necessary. (Defs.' Resp. Mot. Compel at 5.)

With respect to all of their interrogatories, plaintiffs contend that they are entitled to a formal, complete, verified answer. Defendants, however, contend that their counsel's e-mail messages, coupled with the fact that plaintiffs can ask about the topics at the defendants' upcoming depositions, are sufficient under Rule 26(e), which provides, in relevant part:

> A party . . . who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure

or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e).

At the hearing on the motion, defendants were ordered to serve formal, complete and verified answers to both interrogatories because, even assuming, *arguendo*, that defendants' counsel's e-mail could be considered part of defendants' answers, those answers are insufficient.[3] But, additionally, defendants' argument that Rule 26(e) permits inadequate interrogatory answers to be cured by counsel's e-mail messages is not correct.

Rule 33(b) of the Federal Rules of Civil Procedure requires:

> (1) . . . [I]nterrogatories must be answered:
>   (A) by the party to whom they are directed; or
>   (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.
> . . .
> (3) . . . Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.
> . . .
> (5) . . . The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Fed. R. Civ. P. 33(b). Under Rule 33, answers to interrogatories must be verified and must be signed by the person answering the interrogatory, not only by the party's attorney. *Hindmon v. Natl.-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 619 (7th Cir. 1982) (observing that interrogatory answers

---

[3] As to Interrogatory No. 1, defendants still had not stated whether they contend that they maintained timekeeping records that complied with the FLSA and the IMWL, nor did they identify such records. As to Interrogatory No. 3, neither defendants' initial response (that they did not understand their prior counsel's answer) nor their counsel's subsequent interpretation of that response provided plaintiffs the identity of the "certain plaintiffs" whom defendants admit were not paid sufficient overtime wages. Plaintiffs are entitled to know which plaintiffs defendants admit were not sufficiently paid.

6

signed by attorney and not party violated "the clear mandate of Federal Rule of Civil Procedure 33(a)"); *accord Overton v. City of Harvey*, 29 F. Supp. 2d 894, 901 (N.D. Ill. 1998) (striking as summary judgment exhibit plaintiff's unverified answers to interrogatories signed only by attorney); *McDougall v. Dunn*, 468 F.2d 468, 472-73, 476 (4th Cir. 1972) (finding error in sustaining interrogatory responses signed under oath only by counsel); *Fonville v. Dist. of Columbia*, 230 F.R.D. 38, 45 (D.D.C. 2005) (finding paralegal's signing of interrogatory answers "utterly improper" since interrogatories must be answered by party to whom they were served).

Requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses. *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008). An attorney's communication, e-mail or otherwise, does not do that, even assuming, *arguendo,* that the attorney's statements provide information responsive to the interrogatory.

In addition to providing information, interrogatory answers may be used at trial "to the extent allowed by the Federal Rules of Evidence." Fed. R. Civ. P. 33(c). Pursuing information through interrogatories is "an efficient and cost-effective method of discovery and marshaling evidence for trial." *VICA Coal Co., Inc. v. Crosby*, 212 F.R.D. 498, 505 (S.D.W. Va. 2003); *see also Walls v. Paulson*, 250 F.R.D. 48, 52 (D.D.C. 2008) (noting dual function of interrogatories and rejecting argument that party's failure to sign interrogatory responses and supplemental responses is harmless). Substituting an attorney's communication for the party's sworn statement would undermine that important function and effectively convert the attorney into a witness in the matter. *Saria v. Massachusetts Mut. Life Ins. Co.*, 228 F.R.D. 536, 538-39 (S.D.W. Va. 2005) (granting defendant's motion to compel complete verified interrogatory responses and noting that since

7

interrogatory responses may be used at trial they are "nothing short of testimony"). Defendants' counsel's e-mails, therefore, can not satisfy defendants' obligations in responding to plaintiffs' interrogatories.

Rule 26(e), which defendants cite here, does not diminish a party's obligation under Rule 33(b). Rule 26(e) imposes an obligation of timely *supplementation* of discovery responses that arises whenever the party learns that its prior disclosures and discovery responses are in some material respect incomplete or incorrect. It presumes that proper formal, complete and sworn answers had been previously served.

One consequence of a party's failure to provide information in disclosures, discovery responses or supplementation of discovery is that the party may not use that information as evidence on a motion, or at a hearing or trial, unless the court finds grounds to excuse the failure. Fed. R. Civ. P. 37(c)(1). Rule 26(e)(1)(A) avoids that consequence if the information has been made known to the other parties during the discovery process or in writing. The cases defendants here cite, *Westefer v. Snyder*, 422 F.3d 570 (7th Cir. 2005), *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725 (7th Cir. 2004), and *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 542 F. Supp. 2d 849 (N.D. Ill. 2008), each arise in that situation. (Defs.' Resp. Mot. Compel at 5.) In all three cases, the issue before the court was whether the plaintiff could use certain information to respond to the defendant's motion for summary judgment although the plaintiff had not included that information in earlier formal discovery responses and disclosures. Because the information had, in fact, been made known to the defendant during the discovery process, Rule 26(e)(1)(A) permitted the court to consider the

information.[4]

None of the cases cited by defendants suggest that Rule 26(e)(1)(A) is a substitute for a proper response under Rule 33(b). The premise of Rule 26(e)(1) is that the party "has responded to an interrogatory" and has subsequently learned that "in some material respect the disclosure or response is incomplete or incorrect . . . ." An answer to an interrogatory that is incomplete or evasive when made is not an answer; it is a failure to answer. Fed. R. Civ. P. 37(a)(4).

The issue presented in the cases cited by defendants is very different from the one presented here. Plaintiffs' motion asks whether the party propounding interrogatories has a right to insist on full answers sworn under oath and signed by the responding party, for purposes of obtaining both information and evidence. Under the plain language of Rule 33(b), the answer to that question is yes.

## II. Plaintiffs' Motion for a Protective Order

Plaintiffs also moved for a protective order barring defendants from inquiring at depositions

---

[4] In *Westefer*, 422 F.3d at 584 n. 21, the court of appeals found error in the district court's decision under Rules 26(e) and 37 to strike plaintiffs' evidence submitted in response to defendant's summary judgment motion. Although the affidavits had raised a new theory of liability not previously included in answers to interrogatories, the change of theory created no unfair surprise because it was defendants' delay in producing information in discovery that had prompted the plaintiffs' change. Similarly, in *Gutierrez*, 382 F.3d at 732-33, the court of appeals affirmed the district court's decision to allow use of defendants' employee's affidavit in conjunction with summary judgment although the employee had not been identified in a Rule 26 disclosure because the affiant had otherwise been disclosed in the deposition of defendants' corporate representative. The court of appeals also said the district court erred in considering an affidavit of another witness who had not been sufficiently disclosed. *Id*. at 734. Likewise, in *Fast Food Gourmet*, 542 F. Supp. 2d at 853-54, the district court allowed the use of certain components of plaintiff's trade secrets claim and not others based on the court's determination about whether the information had been made known to defendants during an earlier deposition.

or otherwise seeking discovery regarding plaintiffs' immigration status. (Pls.' Prot. Order Mot.) Plaintiffs argue that the information is not relevant to the claims or defenses in the litigation, and that allowing such discovery would intimidate not only the plaintiffs in this action but also other plaintiffs in similar litigation. (*Id.* at 5-6). Defendants argue that the information is relevant to their defense that any plaintiffs who are undocumented workers are not covered "employees" under the FLSA, and that even if they are "employees" under the FLSA, they are not entitled under the statute to the monetary relief they seek. (Defs.' Resp. Prot. Order Mot. at 2-3.)

The protective order was granted because courts that have considered the issue have held – uniformly as far as the cases cited by the parties or this court's research discloses – that immigration status is not relevant to a claim under the FLSA for unpaid wages for work previously performed. Defendants' argument relies on decisions concerning claims for other remedies under different statutes.

The FLSA provides in pertinent part:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). With certain inapplicable exceptions, an "employee" is defined under the FLSA to include "any individual employed by an employer." *Id.* § 203(e)(1-4). "This definitional framework – a broad general definition followed by several specific exceptions – strongly suggests that Congress intended an all encompassing definition of the term 'employee' that would include all workers not specifically excepted." *Patel v. Quality Inn S.*, 846 F.2d 700, 702 (11th Cir. 1988).

Because undocumented workers are not among the groups of workers specifically exempted in the statute, they "plainly come within the broad statutory definition of 'employee.'" *Id.* at 703; *accord In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987). The Fifth Circuit in *Reyes* took the extraordinary step of issuing a writ of mandamus directing the district court to withdraw a discovery order requiring plaintiffs in an FLSA case to answer questions regarding whether they were undocumented workers. 814 F.2d at 170-71.

Defendants correctly observe that the Seventh Circuit has not expressly addressed the issue. Several district courts in this circuit have, however, found a plaintiff's immigration status irrelevant to the plaintiff's claim for unpaid wages under the FLSA. *See, e.g., Hernandez v. City Wide Insulation of Madison, Inc.*, No. 05 C 0303, 2006 WL 3474182 (E.D. Wisc. Nov. 30, 2006) (denying motion to reconsider protective order barring discovery of plaintiffs' immigration status as irrelevant and prejudicial); *Ponce v. Tim's Time, Inc.,* No. 03 C 6123, 2006 WL 941963 at *1 (N.D. Ill. March 16, 2006) (excluding as irrelevant and prejudicial evidence of plaintiffs' immigration status and stating that "undocumented workers are 'employees' within the protection of the FLSA, every bit as much as documented workers"); *Cortez v. Medina's Landscaping*, No. 00 C 6320, 2002 WL 31175471 (N.D. Ill. Sept. 30, 2002) (denying defendants' motion to compel discovery concerning plaintiffs' immigration status and finding that undocumented workers are protected by FLSA).

Defendants argue that when the Seventh Circuit does address the issue it will hold that undocumented workers have no remedy under the FLSA either because they have violated federal immigration law or "because such individuals cannot be harmed in a legal sense as they were not entitled to work in the United States in the first instance." (Defs.' Resp. Prot. Order Mot. at 2.) Thus, defendants argue, discovery as to plaintiffs' immigration status is relevant. For support,

11

defendants rely on two cases brought under the National Labor Relations Act ("NLRA"): *Del Rey Tortilleria, Inc. v. National Labor Relations Board*, 976 F.2d 1115 (7th Cir. 1992) and *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137 (2002). But defendants construe those cases too broadly.

At issue in *Del Rey Tortilleria* was a National Labor Relations Board ("NLRB") order directing an employer to pay two improperly terminated employees "backpay," that is, pay for the period after their termination and before the defendant employer offered reinstatement. The employer contested the order on the ground that the employees were undocumented aliens. 976 F.2d at 1117, 1118. The Seventh Circuit agreed with the employer, finding dispositive an earlier decision by the Supreme Court, *Sure-Tan, Inc. v. National Labor Relations Board*, 467 U.S. 883 (1984). *Del Ray Tortilleria*, 976 F.2d at 1118, 1121-22. In *Sure-Tan*, the Court held that, although undocumented workers are protected as "employees" under the NLRA, an NLRB order requiring reinstatement of terminated undocumented workers with "backpay" (again, meaning payment for the period between termination and reinstatement) was proper only to the extent it was conditioned on the workers' legal readmission into the United States. 467 U.S. at 891-92, 902-03.

Significantly, in *Del Rey Tortilleria*, the Seventh Circuit distinguished the situation in which undocumented workers are suing for unpaid wages and damages under the FLSA, noting that the employees in *Del Rey Tortilleria* were not seeking "recovery for work already performed, but for work which they would have performed if they had remained with the Company." 976 F.2d at 1122 n. 7. The Seventh Circuit declined to reach the issue of whether an undocumented worker could receive "backpay" (in the sense of unpaid wages) under the FLSA or Title VII. *Id.*

The Seventh Circuit in *Del Rey Tortilleria* also observed that the passage of the Immigration

12

Reform and Control Act of 1986 ("IRCA") might reinforce the unavailability of backpay (in the sense ordered by the NLRB) for undocumented workers. 976 F.2d at 1122. Subsequently, in *Hoffman*, the Supreme Court held that the IRCA foreclosed the NLRB's authority to award backpay for terminated undocumented workers, although the NLRB retained authority to impose other sanctions against the employer on behalf of undocumented workers. 535 U.S. at 151-52. The tension between the IRCA and the NLRB's award of "back-pay to an illegal alien for years of work not performed" was illustrated by the fact that the employer could not legally employ the worker and the terminated worker could not legally mitigate his damages. *Id*. at 149-50.

Notably, in *Hoffman*, as in *Sure-Tan* and *Del Rey Tortilleria*, the "backpay" at issue was pay for the period after the employee was terminated. None of those cases dealt with the damages claimed here, that is, pay for work actually performed. To the extent that the Seventh Circuit has spoken at all on the issue, it has distinguished the award of "backpay" for work that "would have [been] performed" but for the improper termination from "unpaid wages and damages . . . for work . . . already performed . . . ." *Del Rey Tortilleria*, 976 F.2d at 1122 n. 7.

Plaintiffs here do not seek backpay for wages they would have earned if they had continued to work, nor do they seek reinstatement or any other forward-looking remedy. Rather, plaintiffs' claim here is solely for unpaid statutory overtime and minimum wages for work they claim they have already performed. (Third Am. Compl. at 8-12.) Such a claim does not assume the continued availability of the worker or trigger a new IRCA violation. District courts of this circuit have not viewed the *Hoffman* and *Del Rey Tortilleria* decisions as precluding an undocumented worker's claim under the FLSA for unpaid wages for work already performed. *See, e.g., Cortez,* 2002 WL 31175471 at *1 (stating that "*Hoffman* does not hold that an undocumented alien is barred from

13

recovering unpaid wages for work actually performed"); *Hernandez*, 2006 WL 3474182 at *1 (collecting cases and concluding that *Hoffman* does not stand for the proposition that FLSA defendants need not pay back wages actually earned by workers).

The federal immigration policy embodied in IRCA does not conflict with the requirement that an employer compensate undocumented workers at the statutorily required rate for work that they already have performed. Rather, application of the FLSA to undocumented and documented workers alike supports the policies of IRCA. If the FLSA did not cover such workers, "employers would have an incentive to hire them . . . . By reducing the incentive to hire such workers the FLSA's coverage of undocumented aliens helps discourage illegal immigration and is thus fully consistent with the objectives of the IRCA." *Patel*, 846 F.2d at 704-05 (emphasis omitted); *accord Flores v. Amigon*, 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002) (noting that application of FLSA to undocumented workers eliminates any financial advantage to hiring illegal workers and encourages employers to comply with IRCA's requirement to investigate and confirm immigration status).

Furthermore, a number of courts have recognized that allowing discovery of a plaintiff's immigration status would have an *in terrorem* effect likely to deter FLSA claims. "If forced to disclose their immigration status, most undocumented aliens would withdraw their claims or refrain from bringing an action . . . in the first instance. This would effectively eliminate the FLSA as a means for protecting undocumented workers from exploitation and retaliation." *Flores*, 233 F. Supp. 2d at 465 n. 2 (internal citations omitted).

Discovery regarding plaintiffs' immigration status is not relevant to any claim or defense. As announced in open court during the hearing in this matter, plaintiffs' motion for a protective order is granted.

_____
**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**Dated:** March 1, 2010