IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VIRGINIA VILLAREAL, on behalf of herself and all other individuals similarly situated, known and unknown, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 07 C 1656 |
| v. | ) ) ) | Jeffrey T. Gilbert Magistrate Judge |
| EL CHILE, INC., CALETA, INC., CALETILLA, INC., ROQUETA, INC., TIMOTEO MANJARREZ, and MARIA MANJARREZ, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Virginia Villareal and other named plaintiffs, on behalf of themselves and all

other individuals similarly situated, filed this lawsuit against defendants El Chile Inc., Caleta

Inc., Caletilla, Inc., Roqueta Inc., and Timoteo and Maria Manjarrez alleging defendants failed to

pay their employees overtime and minimum wages in violation of the Illinois Minimum Wage

Law ("IMWL"), 820 ILCS 105/1, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§ 201, *et seq.* This matter is before the Court on plaintiffs' motion for partial summary judgment

on liability with respect to Counts I and II of the third amended complaint [184].[1]

---

[1] Count I of the third amended complaint alleges a class claim under the IMWL, 820 ILCS 105/1,
*et seq.*, on behalf of plaintiffs and all similarly situated current and former employees, for defendants'
alleged failure to pay overtime wages. Count II alleges individual claims under the FLSA, 29 U.S.C. §
201, *et seq.*, for defendants' alleged failure to pay overtime wages to the named plaintiffs.

For all of the reasons set forth in this Memorandum Opinion and Order, the motion for partial summary judgment is granted in part and denied in part.[2]

## BACKGROUND[3]

Defendants El Chile Inc., Caleta Inc. and Roqueta Inc. are restaurants and Caletilla Inc. is a banquet hall (collectively referred to herein as "the corporate defendants"), all of which are located in Chicago, Illinois and loosely operate under the name "La Condesa." (Defs' Resp. to Pls' SOF ¶¶2, 3, 4, 5, 32). The Roqueta restaurant, however, ceased operations in August 2008. (Defs' Resp. to Pls' SOF ¶5). Defendants Timoteo and Maria Manjarrez (together referred to herein as "the individual defendants") are a married couple who own the corporate defendants.[4] (Defs' Resp. to Pls' SOF ¶¶ 8, 9, 12). The employees whose wages are at issue in this case currently work or have worked at one or more of the corporate defendants. On October 19, 2007, Judge Darrah certified a class comprised of "all persons employed by Defendants between December 18, 2003 and present, who were paid on an hourly rate or day basis rate, and who

---

[2] In accordance with the provisions of 28 U.S.C. § 636(c), the parties executed a Consent to Exercise of Jurisdiction by a United States Magistrate Judge, in which they voluntarily consented to have this Court exercise the court's jurisdiction to conduct all proceedings, including entry of final judgment in this case.

[3] Both parties dispute substantial portions of their opponents' Rule 56.1 Statement of Facts, and there are very few facts on which the parties agree. The Court has spent a substantial amount of time reviewing the parties' submissions and culling the facts submitted in support of and opposition to the motion at issue so as to identify the undisputed material facts. Included in this section are the facts the Court has determined to be material to the motion at issue. These facts are taken from both of the parties' Rule 56.1 statements of facts. When a fact herein is asserted without qualification, it is not disputed by the parties. Where there is a dispute, the Court will so acknowledge.

[4] Timoteo Manjarrez owns 95% of the stock in El Chile. Inc. (Defs' Resp. to Pls' SOF ¶8(a)). Maria Manjarrez owns 100% of the stock in Caleta, Inc. (Defs' Resp. to Pls' SOF ¶8(b)). Timoteo and Maria each own 50% of the stock in Caletilla, Inc. (Defs' Resp. to Pls' SOF ¶8(c,d)). Timoteo and Maria each own 50% of the stock in Roqueta, Inc. (Defs' Resp. to Pls' SOF ¶8(e,f)).

worked in excess of 40 hours in an individual week, but who were not paid overtime at one and one half their regular pay." *See* [Dkt.#19].

The individual defendants resided in Mexico for a substantial portion of the class period. (Defs' Add'l SOF ¶¶1, 2). Although it is disputed how many times Timoteo and Maria returned to the United Stated and how much contact they had with and how much control they had over their employees, including the managers of each of the corporate defendants, during the period in which they lived in Mexico, it is not disputed that Timoteo resided in Mexico from 2002 through 2010, and Maria resided in Mexico from 2003 through 2006. (Defs' Add'l SOF ¶¶1, 2).

Timoteo Manjarrez is the president of each of the corporate defendants. (Defs' Resp. to Pls' SOF ¶7). He controls their finances and is the only person who is authorized to sign checks for any of the corporate defendants. (Defs' Resp. to Pls' SOF ¶17). Timoteo Manjarrez hired the managers for each of the restaurants and the banquet hall, and he admitted that he directed the individual managers to avoid scheduling employees to work overtime. (Defs' Resp. to Pls' SOF ¶¶16, 17).

Although the parties dispute how much contact Maria had with the managers when she resided in Mexico, it is not disputed that she reviewed and initialed payroll records throughout that period of time. (Defs' Resp. to Pls' SOF ¶15). The parties, however, dispute the substance of her review of the payroll records and the significance of her having done so. (*Id.*) When Maria returned to the United States in 2007 (Defs' Add'l SOF ¶1), she became one of the supervisors of the corporate defendants beginning in March 2007 (Defs' Resp. to Pls' SOF ¶12). Her duties

after March 2007 included paying employees, calculating sales tax and paying bills on behalf of the corporate defendants. (Defs' Resp. to Pls' SOF ¶13).[5]

The individual defendants assert that Adela Salazar, who also is class member, was and is the general manager in charge of administration for all of the corporate defendants. (Defs' Add'l SOF ¶19). The individual defendants assert that Adela made the decisions about the operation of the corporate defendants while they were in Mexico. (Defs' Add'l SOF ¶19). Although plaintiffs deny that Adela had the authority to make any decision without seeking direction, approval or consent from either of the individual defendants (Pls' Resp. to Defs' Add'l SOF ¶19), plaintiffs do not dispute that Adela had certain payroll and administrative responsibilities for each of the corporate defendants (Pls' Resp. to Defs' Add'l SOF ¶21). Specifically, Adela performed bookkeeping and payroll functions and collected money from each of the corporate defendants. (Defs' Add'l SOF ¶21). She made deposits into the corporate checking accounts and calculated the cash payments to employees. (Defs' Add'l SOF ¶21). When a new employee was hired by one of the managers, Adela called Corporate Accounting Inc., the accounting company used by the corporate defendants, and added the new employee to the payroll. (Defs' Add'l SOF ¶21). Employees Rosa Camarena and Olivia Vertin also worked at the central office performing payroll and another administrative duties for the corporate defendants. (Defs' Resp. to Pls' SOF ¶19).

_____

[5] Although paragraph 13 of plaintiffs' Rule 56.1 Statement of Facts is disputed by defendants, a close reading of defendants' response reveals that defendants do not dispute that Maria performed certain duties, including paying employees, and a review of the cited testimony confirms that Maria testified at her deposition that she performed these duties. Instead, defendants dispute the lack of specificity as to the time frame when Maria began to perform these duties and for which of the corporate defendants she performed these tasks. In their response, defendants also emphasize that Maria is not the only supervisor for the corporate defendants. *See* Defs' Resp. to Pls' SOF ¶13.

Each restaurant and the banquet hall has or had a kitchen manager and a dining room manager, and those managers hire and fire the employees that work at each establishment, assign hours, set the schedule, complete inventory, place orders for supplies and/or food and have the authority to discipline employees.[6] (Defs' Add'l SOF ¶17).  Each corporate defendant purchases its own supplies and food and is invoiced separately for those purchases. (Defs' Add'l SOF ¶34). The corporate defendants, however, use the same menu and collectively advertise as "La Condesa." (Defs' Resp. to Pls' SOF ¶32).

Each corporate defendant maintains its own separate checking account, and there is no commingling of funds among the corporate defendants.  (Defs' Add'l SOF ¶35).  Capital expenditures, such as equipment, are billed and invoiced to each corporate defendant separately. (Defs' Add'l SOF ¶34). The corporate defendants, however, each use Corporate Accounting Inc. to administer the payroll and accounting for each of the defendants (Defs' Resp. to Pls' SOF ¶11) while the cash payroll for each of the defendants is processed by Adela Salazar from a central office (Defs' Resp. to Pls' SOF ¶18).

The parties have submitted extensive briefing on the this motion, and the Court conducted a hearing on January 18, 2011.  This matter is ripe for decision.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 ©; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of

---

[6] There is, however, some dispute as to how much authority the managers had with respect to managing the employees. There is some testimony from plaintiffs that the managers had to get approval or consent from either Timoteo or Maria to hire and fire employees and to set employees' schedules. (Pls' Resp. to Defs' Add'l SOF ¶¶17(c), 23).

identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56©). Once the moving party has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings but must "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995) (non-moving party "must come forward with evidence of a genuine factual dispute").

Although we must read the facts in a light most favorable to the non-moving party (*Cuddington v. Northern Ind. Public Serv. Corp.*, 33 F.3d 813, 815 (7th Cir. 1994)), the non-moving party cannot simply create any factual dispute in order to stave off summary judgment. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). Rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit. *Tolle*, 23 F.3d at 178. "By its very terms, this standard provides that the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-248 (emphasis in original).[7]

---

[7] *See also Wallace v. Greer*, 821 F.2d 1274, 1276 (7th Cir. 1987) ("[T]he existence of disputed facts which do not affect the outcome will not preclude summary judgment."); *Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986) ("[F]acts not outcome-determinative under the applicable law, though in dispute, may still permit the entry of summary judgment."); *Terket v. Lund*, 623 F.2d 29, 31 (7th Cir. 1980) ("The existence of disputed facts is not enough, however, to defeat a motion for summary judgment. The disputed facts must also be material to the legal issues in the case."); *Reich v. Shai Harmelech*, 1996 U.S. Dist. LEXIS 7744, at *10-11 (N.D. Ill. 1996) (granting summary judgment against individual defendants who were husband and wife business owners with respect to their status as employers under the FLSA based on the undisputed facts submitted to the court even notwithstanding the contested issues of fact as to their day-

## DISCUSSION

This matter is before the Court on plaintiffs' motion for partial summary judgment on liability only with respect to Counts I and II of the third amended complaint. Count I alleges a class claim under the IMWL on behalf of plaintiffs and all similarly situated current and former employees for defendants' alleged failure to pay overtime wages, and Count II alleges individual FLSA claims for defendants' alleged failure to pay overtime wages to the named plaintiffs. The FLSA and the IMWL both require employers to pay their employees one and one-half times their regular hourly wage for hours worked beyond forty hours in one week. 29 U.S.C. § 207(a)(1); 820 ILCS § 105/4a(1). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The IMWL similarly defines an "employer" as "any individual, partnership, association, corporation, limited liability company, business trust, governmental or quasi-governmental body, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." 820 ILCS 105/3©.

The FLSA is relevant to plaintiffs' IMWL claims because the IMWL parallels the FLSA, and the same analysis generally applies to both statutes. *See Condo v. Sysco Corp.*, 1 F.3d 599, 601 n. 3 (7th Cir.1993); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 U.S. Dist. LEXIS, at *12 (N.D. Ill. 2004) (citing *Haynes v. Tru-Green Corp.*, 154 Ill. App. 3d 967, 507 N.E.2d 945, 951 (4th Dist.1987)); *O'Brien v. Encotech Constr.*, 2004 U.S. Dist. LEXIS 4696, at *13 (N.D. Ill. 2004). The Illinois Administrative Code also provides that the FLSA regulations are to be used as guidance in interpreting the IMWL (Ill. Admin. Code tit. 56, pt. 210.120 (2009)), and courts

to-day involvement with the business' employees).

have recognized that federal decisions interpreting the FLSA also apply to claims asserted under the IMWL. *See In re Aon Corp. Wage & Hour Employment Practices Litigation*, 2011 U.S. Dist. LEXIS 7288, at *5 (N.D. Ill. 2011). For purposes of this Memorandum Opinion and Order, we rely on federal cases that discuss and analyze IMWL claims in the context of the FLSA to determine whether plaintiffs are entitled to judgment as a matter of law.

Plaintiffs argue that defendants did not pay overtime wages when employees worked in excess of forty hours in an individual work week. They contend that all defendants are employers as defined by the IMWL and FLSA and are jointly liable for the alleged violations. With regard to this motion, the Court must address three issues: (1) whether the individual defendants are "employers" as defined by the IMWL and the FLSA so that they are individually liable for the alleged failure to pay overtime wages; (2) whether the corporate defendants constitute a single enterprise as defined by the FLSA so that they are subject to the FLSA; and (3) whether defendants are joint employers so that they are jointly and severally liable for the alleged violations. The Court will address each issue in turn.

## I. Individual Defendants as Employers under the IMWL and the FLSA

Plaintiff Villareal and the Class Members argue that Timoteo and Maria Manjarrez are "employers" as defined by the IMWL and the FLSA and therefore are individually liable for the failure to pay overtime wages. As stated above, the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA is remedial in nature and must be construed to effect Congress' purpose to protect the nation's workers. *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984). The United States Supreme Court has held that the FLSA must be construed liberally to

apply to the furthest reaches consistent with congressional direction. *See Dole v. Simpson*, 784 F. Supp. 538, 545 (S.D. Ind. 1991) (citing *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207 (1959)). The FLSA contemplates several simultaneous employers who may be responsible for compliance with the FLSA. *Falk v. Brennan*, 414 U.S. 190, 191 (1973). Whether a person or entity is an "employer" under the FLSA is a question of law. *Karr v. Strong Detective Agency Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1985).

With these preliminary factors in mind, the Supreme Court has said that the "economic reality" of the employment relationship controls rather than formalistic labels or common law concepts of agency. *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961). The analysis must focus upon the totality of the circumstances, underscoring the economic reality of the employment relationship. *Donovan v. Sabine Irrigation Co.*, Inc., 695 F.2d 190, 194 (5th Cir.1983). Courts have found that a determination of whether an individual is liable under the FLSA depends not upon whether the individual controlled every aspect of the employees' conduct, but upon whether the individual had control over the alleged FLSA violation. *Grim Hotel*, 747 F.2d at 972; *Simpson*, 784 F. Supp. at 545. In *Dole v. Simpson*, the district court explained: "[T]his is really a question of duty: Based upon their control over decisions causing the violations of the [FLSA], which persons had a duty as a statutory employer not to violate the Act?" 784 F. Supp. at 545.[8]

_____

[8] *See also Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987) (holding that an individual may be held liable as an employer in an FLSA action "provided the defendant had supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation"); *Freemon v. Foley*, 911 F. Supp. 326, 331 (N.D. Ill. 1995) (concluding that "even if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, so long as he or she possess control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual").

In this case, there is no dispute that Timoteo and Maria Manjarrez own the corporate defendants, that Timoteo is the president of each corporate defendant and controls the purse strings of the corporate defendants, and that Maria currently is a supervisor of the corporate defendants and has been since March 2007.  (Defs' Resp. to Pls' SOF ¶¶7, 8, 12, 17).  Timoteo also personally hired the managers for each of the restaurants and the banquet hall (Defs' Add'l SOF ¶16).

The individual defendants, however, contend that they are not "employers" for purposes of the FLSA because they are not involved in the corporate defendants' day-to-day activities, do not have supervisory authority over the employees complaining about the FLSA violations and are not responsible "in whole or in part for the alleged violation." (Defs' Resp. Br. [Dkt.#212], at 7).  As to Maria, defendants argue there is a disputed issue as to what role she had from 2003 through March 2007 and, if her testimony is to be believed, whether her review and initialing of the payroll records for the corporate defendants would be enough to make her liable for the alleged FLSA violations during that time period.  (Pls' SOF ¶15).  There is no dispute that she was a supervisor of each of the corporate defendants after March 2007.  (Defs' Resp. to Pls' SOF ¶12).   Both Timoteo and Maria admit that they told the managers not to schedule employees to work overtime.  (Defs. Resp. to Pls. SOF ¶¶16, 17).[9]

Timoteo and Maria Manjarrez also argue that the managers were hired to manage each of the corporate defendants but instead they "chose to let the employers run amok in terms of hours

_____

[9] Although it is not included in any of the statements of facts submitted to the Court, Maria Manjarrez testified as the Rule 30(b)(6) witness for the corporate defendants that "when [Adela] took over the office and everything, I [Maria] told her that the employee were not supposed to get overtime. And she even told me that she spoke to the managers and told them not be giving overtime. They didn't listen." (Defs' Exs. in Resp. to Pls' Motion [Dkt.#204], Ex. 2 at 292).

worked. . . ." (Defs' Resp. Br. at 7). These facts, however, are disputed and contradicted by plaintiffs' deposition testimony and affidavits in which numerous plaintiffs testify that both Timoteo and Maria Manjarrez are and were involved in day-to-day decisions about the operation of the restaurants and banquet hall and the supervision of the employees. (Pls' Resp. to Defs' Add'l SOF ¶¶1-16, Exs.1, 2, 3, 4).

Plaintiffs also contend that the Manjarrezs' instruction to their managers not to schedule employees for overtime work indicates they do have control over day-to-day decisions about the operation of the restaurants. *See* 29 C.F.R. § 785.13 ( "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and it must make every effort to do so."). The individual defendants, however, assert there are genuine issues of fact regarding their control over the employees including, among others, whether the individual defendants had any role in the hiring and firing of the employees or in setting their schedules and requiring them to work overtime without overtime compensation.

Because we must read the facts in a light most favorable to defendants as the non-moving parties, we will assume for purposes of plaintiffs' motion for partial summary judgment that the individual defendants are not and were not involved in day-to-day decisions about the operation of the restaurants and banquet hall and the supervision of the employees because that issue is hotly disputed by the parties. The question then boils down to this: assuming Timoteo and Maria Manjarrez are not involved in the day-to-day decisions about the operation of the restaurants and

banquet hall and the supervision of their employees, are they nevertheless employers as defined by the FLSA based on the remaining undisputed facts in the record?

We understand that plaintiffs' argument is that notwithstanding the disputed facts, the economic reality and totality of the circumstances that can be inferred from the undisputed facts demonstrate that Timoteo and Maria are employers within the meaning of the FLSA and they are personally liable for the alleged failure to comply with the FLSA. (Pls' Opening Br. [Dkt.#185], at 3-4; Pls' Reply [Dkt.#213], at 5-7). Plaintiffs emphasize the Manjarrezs' financial control over the corporate defendants, and we recognize that courts have held that financial control over a corporation is a significant factor in determining whether an individual meets the statutory definition of an employer. *See, e.g., Grim Hotel*, 747 F.2d at 972 (imposing liability on a majority shareholder who "held [corporations'] purse strings and guided their policies"); *Elliott Travel*, 942 F.2d at 966 (finding that the majority owner "controlled the purse strings"). Case law also demonstrates that individuals may be found to be employers even without the "continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999).

Indeed, "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitation on control 'does not diminish the significance of its existence.'" *Id.* (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir.1982)). One court even found that an individual's ability to hire managerial staff indicates that the individual may exert sufficient control to be an employer. *See*

*Herman*, 172 F.2d at 140 (stating that "the fact that he hired individuals who were in charge of the [other employees] is a strong indication of control").[10]

This is a close call on the record presently before the Court. To hold Timoteo and Maria Manjarrez liable as statutory employers at this stage in the litigation, however, the Court would have to weigh conflicting testimony regarding, among other things, the extent to which they had control of the managers of the corporate defendants, the employees who allege their rights were violated and the corporate decisions not to pay employees overtime wages when they worked more than 40 hours a week. Therefore, we conclude that the record must be more fully developed as to the individual defendants' supervisory and operational involvement with the corporate defendants, their employees and the alleged violations of the FLSA and the IMWL.

It is possible that plaintiffs can prevail by proving at trial little more than they have proven already in the context of summary judgment with respect to the roles and responsibilities of Timoteo and Maria Manjarrez. But we cannot say at this time that the disputed facts relevant to this determination are immaterial or could not be outcome determinative in the hands of the fact-finder at trial so that the Court should disregard them, forego hearing from the witnesses themselves to assess their credibility, and grant plaintiffs' motion for summary judgment at this time. While it is difficult to believe that Timoteo and Maria Manjarrez, as the sole owners of businesses that generated gross sales between $1,400,000 and $2,200,000 for the years 2004 through 2007 (Defs' Resp. to Pls' SOF¶34), with absolute control of the purse strings, the power

---

[10] *See also Carter v. Dutchess Comm. College*, 735 F.2d 8, 13 (2d Cir.1984) ( "The fact that control over a worker may be qualified is not a sufficient factor, in and of itself, to place an employment relationship beyond the scope of the FLSA."); *Braddock* v. Madison County, 34 F.Supp. 2d 1098, 1107 (S.D. Ind. 1998) (stating that "[t]he defendant's control over the relevant aspects of employment need not be exclusive").

to hire and fire the managers of the restaurants, and the authors of a directive that employees not be scheduled to work overtime hours, completely delegated to others the actual operation of the businesses and the supervision of employees as they now contend, the Court cannot determine as a matter of law that the individual defendants' position is so incredible as to warrant disregarding it as a matter of law.

The cases cited by plaintiffs are distinguishable from this case. In *Freemon v. Foley*, 911 F. Supp. 326 (N.D. Ill. 1995), the plaintiff was absent from her job for a period of time for doctors' appointments and for medical care for her children, and her employment was terminated because she failed to provide requested documentation relating to those absences involving medical care for her children. 911 F.2d at 328-329.  The plaintiff sued her former employer and supervisors alleging that they had violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., by interfering with her ability to take leave under the FMLA.  *Id*. at 328.  The FMLA "tracks word for word the definition [of employer] used in the FLSA." *Freemon*, 911 F. Supp. at 330. Given the parallel between the two statutes, the court in *Freemon* looked to cases interpreting the FLSA to enlighten its interpretation of the term employer under the FMLA. *Id*.

The individual defendants filed a motion for summary judgment claiming they were not employers under the FMLA. *Id*. The court granted summary judgment as to one of the former supervisors, but denied summary judgment as to the remaining individuals. *Id*. at 332.  The court concluded that the FMLA extended to individuals who controlled, in whole or in part, the plaintiff's ability to take a leave of absence and return to her position.  *Id*.  The undisputed facts showed that the supervisors who remained as defendants in the case recommended that the plaintiff be fired because of her absences and failure to provide the requisite documentation to

support those absences. *Id*. at 331-332. The court specifically found that it was clear from the undisputed facts that the supervisors who were denied summary judgment "exercised sufficient control over Plaintiff's ability to take protected leave to qualify as employers under the FMLA." *Id*. at 331. Based on the facts, the court ultimately determined that "because [Plaintiff's supervisors] were capable of impeding or denying [her] ability to exercise her statutorily protected right to leave under the FMLA" they were employers for purposes of the FMLA. *Id*. at 332.

The facts in *Freemon* are much stronger for the plaintiff in that case than are the facts in this case. The supervisors in *Freemon* had direct contact with and control over the complaining employee. The supervisors who remained in the case are the individuals who recommended that the plaintiff's employment be terminated. There is no such undisputed evidence of direct supervision or contact in this case. If the facts as asserted by Timoteo and Maria Manjarrez are to be accepted as true (which we must do so on this motion), they had no contact with the employees who worked overtime without being paid for it, and they played no role in hiring or firing them or in setting their salaries.

Similarly, in *Reich v. Shai Harmelech*, 1996 U.S. Dist. LEXIS 7744 (N.D. Ill. 1996), the district court found husband and wife business owners individually liable as employers under the FLSA because (1) the husband defendant was the controlling shareholder, director and officer of the company; (2) he signed the company employee payroll; (3) he signed a letter to all employees attesting to the financial stability of the company; (4) he had knowledge and authority to act on employees' complaints about non-sufficient funds and non-payment of payroll checks; (5) he represented the company and conciliated with the Wage and Hour division of the

Department of Labor regarding employees' complaints of insufficient funds and non-payment of salaries; and (6) he had the authority to establish the salaries of the company's officers. 1996 U.S. Dist. LEXIS 7744, at * 10-11.  The district court also found the defendant wife individually liable as an employer under the FLSA because (1) she was an officer and director of the company; (2) she had knowledge that employees received payroll checks when there were non-sufficient funds; (3) she had knowledge of the payroll and she wrote and deposited payroll checks made out to her husband from accounts at other banks; and  (4) she wrote other checks for expenses on behalf of the company. *Id*.

There are more facts to support a finding of personal liability in *Reich* than in this case, and similar facts used to support the court's conclusion in *Reich* that the individual defendants were employers under the FLSA are disputed in our case. Specifically, Timoteo disputes that he had any knowledge of the employees' salaries or any complaints about or by them. He also denies that he had any knowledge about the finances of the restaurants because, according to him, Adela Salazar took care of those things. As for Maria, she disputes that she had any knowledge of the employees' salaries and computation of payroll, and she denies any responsibility for writing checks on behalf of the corporate defendants.

Even cases the Court has identified in its own research demonstrate that the facts of this case are not appropriate for summary judgment on the question of personal liability of the individual defendants.  In *Hernandez v. City Wide Insulation of Madison, Inc.*, 2006 U.S. Dist. LEXIS 48399 (E.D. Wis. 2006), plaintiffs sued their employer and individual defendants under the FLSA alleging that defendants failed to pay them overtime and retaliated against them when they complained about the failure to pay overtime wages.  2006 U.S. Dist. LEXIS 48399, at *1-

2.  One of the individual defendants was the president of the company, and he moved with another individual defendant who was a supervisor for summary judgment arguing that they were not employers within the FLSA.  *Id*. at *8-11.

In applying the economic reality test and considering the totality of the circumstances, the district court found that the president was liable.  *Id*. at *11-13.  The court used a four-factor test: (1) whether the individual has the power to hire and fire; (2) whether he supervises and controls employee work schedules or conditions; (3) whether he determines the rate and method of payment; and (4) whether he maintains employment records.  *Id*. at *4; *see also Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983); *George v. Badger State Indus.*, 827 F. Supp. 584, 587 (W.D. Wis.1993). The court recognized that no one factor is dispositive (*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir.1988)) and concluded that the ultimate question is whether the individual had "supervisory authority over the complaining employee" and is "responsible in whole or part for the alleged violation."  *Id*. at *5 (citing *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)).

The district court concluded that the president of the company was individually liable as an employer under the Act.  *Id.* at *12.  The district court found that he participated in the decision-making process to determine the rates and method of payment for the employees and had the authority to hire and fire the managerial employees.  *Id*. at *11-12.  The court also found that he was the "final decision maker on day-to-day matters at the corporate level." *Id*. at *12-13.  Although the president argued that he had limited contact with the corporate office and little involvement with the day-to-day operations of the branch office, the district court concluded that "to be liable as an employer, it is only necessary that an individual exert control over the aspect

of employment alleged to have been violated" and that he "exerted sufficient control over this activity to be liable as an employer under the FLSA." *Id.* at \*13 (citing *Riordan*, 831 F.3d at 694).

Applying the above factors enumerated in *Hernandez* to the case at issue, it is clear that, based on the record at this time, we cannot grant plaintiffs' motion. Considering the first factor, it is not disputed that Timoteo hired all of the managers and that weighs in favor of his being an employer. The second factor is inconclusive because while Timoteo disputes that he had any control over the employees' work schedules, he did admit that he directed the managers not to schedule employees to work overtime. As for the third factor, although Timoteo controls the purses strings of the corporate employees, there is no evidence that Timoteo determined the rate or method of payment for the employees. Finally, the fourth factor weighs against Timoteo being an employer as there is no evidence that he maintained any employment records. As for Maria, none of these factors weighs in favor of a finding that she is an employer. Thus, based on the factors enumerated in *Hernandez*, if that analysis were to be applied in this case, neither Timoteo nor Maria would be an employer for purposes of the FLSA on the record before the Court at this time.[11]

Similarly, in *Donovan v. Grim Hotel Company*, 747 F.2d 966 (5th Cir. 1984), the Secretary of Labor and 177 hotel employees sued five hotel corporations and their president for violations of the FLSA regarding minimum wage and overtime pay. 747 F.2d at 968. The

---

[11] For purposes of summary judgment, we point to *Hernandez* as a case distinguishable from the facts of our case. Although it does not have any precedential effect on this Court, it is instructive to our analysis. In addition, we cite *Hernandez* only for its application to our analysis of the present motion for summary judgment. The evidence adduced at trial very well might lead to a different conclusion, applying the four factors used in *Hernandez*.

employees whose wages were at issue in this case worked in five different Texas cities. *Id*. Each of the five hotels was owned by a corporate defendants, and each of the corporations had the one hotel as its sole assert, and the remaining defendant Charles Alberding was the president of the five corporations. *Id*. Affirming the district court, the Fifth Circuit agreed that the president was an employer under the FLSA based on the district court's findings: "Alberding began and controlled the hotel corporations. He held their purse-strings and guided their policies. It was only he who could authorize compliance with the Fair Labor Standards Act. He personally selected the managers of every hotel. He traveled to Texas to inspect the hotels and to solve major problems." *Id*. at 972. The Fifth Circuit concluded that it could not "easily imagine firmer proof of Alberding's 'employer' status." *Id*. at 972 n.7.

The facts in our record are not as strong as they were in *Grim Hotel Company*. Also, *Grim* was decided after a full trial, so the facts were more developed and the court was able to weigh the evidence presented and make its findings. The court concluded that Alberding incorporated the hotels and managed their operation and was the "top man." 747 F.2d at 972. Here, Timoteo and Maria dispute that they played any role in the operation of the corporate defendants and the supervision of their employees. Although it is not disputed that they own the corporate defendants, the record is not clear that Timoteo and Maria operated the corporate defendants in any manner similar to the individual defendant in *Grim*.

Unlike *Hernandez* and *Grim Hotel Company* and the cases cited by plaintiffs, the record is not sufficiently developed on the undisputed facts for the Court to grant plaintiffs judgment as a matter of law at this time. For all of these reasons, plaintiffs' motion for partial summary judgment is denied on the issue of the individual defendants' personal liability at this time.

## II. Enterprise Coverage under the FLSA

Plaintiffs argue that the corporate defendants constitute a single enterprise under the FLSA. An employee is covered by the FLSA when either (1) the plaintiff/employee is a covered individual under the FLSA or (2) the employer is a covered enterprise. *Rivera v. Heights Landscaping Inc.*, 2004 U.S. Dist. LEXIS 3746, at *2 (N.D. Ill. 2004). In other words, coverage exists if: (1) the employee is engaged in commerce (*i.e.*, individual coverage);[12] or (2) the employer is an enterprise engaged in commerce (*i.e.*, enterprise coverage). 29 U.S.C. §§ 206, 207. An "enterprise engaged in commerce" also requires, among other things, annual gross revenue of $500,000 or greater. 29 U.S.C. § 203(s)(1)(A); *see Zorich v. Long Beach Fire Dep't & Ambulance Serv., Inc.*, 118 F.3d 682, 686 (9th Cir.1997) (interpreting identical language in 29 U.S.C. § 206). It is not disputed that each corporate defendant individually does not meet the statutory required gross sales to come within the FLSA's definition of enterprise engaged in commerce. However, the corporate defendants taken as a group do meet the revenue requirements. (Defs' Resp. to Pls' SOF ¶34).

The FLSA defines the term enterprise as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). As such, two or more individuals, entities or business units are considered a single enterprise if (1) they perform related activities, (2) through unified operation or common control, and (3) for a common business purpose. *See* 29 C.F.R. 779.202; *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973); *Jensen v. Longwood Towers LLC,* 2000 U.S.

---

[12] "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Dist. LEXIS 7319, at *5 (N.D. Ill. 2000).   Therefore, the obligation of the corporate defendants to conform to the FLSA's wage and hour requirements depends on whether they, viewed together, constitute a single enterprise.

### A.  The Corporate Defendants Perform Related Activities

The corporate defendants contend that they are not engaged in related activities because, among other things, they are financially independent of each other and each defendant maintained its own bank account and did not commingle funds with any other defendants. (Defs' Resp. Br. at 12). The corporate defendants also argue they are not engaged in related activities because the banquet hall only worked on an as needed basis unlike the restaurants, and the banquet hall employees did not work at the restaurants. *Id.*

While these facts may be true, they are not material to the analysis of whether the corporate defendants are engaged in related activities.[13]   Related activities are those activities that are the "same or similar."  29 C.F.R. § 779.206(a); *Arnheim & Neely*, 410 U.S. at 518.  In *Morgan v. Speak Easy LLC*, 625 F. Supp. 2d 632 (N.D. Ill. 2007), a district court held that two affiliated restaurants that considered themselves to be "sister" operations and were owned by the same individual were engaged in the restaurant business.  *Id.* at 647-648.  The court concluded

---

[13] As discussed above, although we must read the facts in a light most favorable to defendants, the individual defendants simply cannot create a factual dispute in order to stave off summary judgment. *Cuddington*, 33 F.3d at 815.  Rather, there must be a genuine dispute over those *facts that could actually affect the outcome of the lawsuit. Tolle*, 23 F.3d at 178 (emphasis added).  "By its very terms, this standard provides that *the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment*; the requirement is that there be no genuine issue of *material* fact." *Anderson*, 477 U.S. at 247-248 (emphasis added). *See also Wallace*, 821 F.2d at 1276 ("[T]he existence of disputed facts which do not affect the outcome will not preclude summary judgment."); *Wainwright Bank & Trust Co.*, 806 F.2d at 149 (""[F]acts not outcome-determinative under the applicable law, though in dispute, may still permit the entry of summary judgment."); *Terket*, 623 F.2d at 31 ("The existence of disputed facts is not enough, however, to defeat a motion for summary judgment. The disputed facts must also be material to the legal issues in the case.").

that these facts were sufficient to satisfy the related activities standard for enterprise coverage for purposes of FLSA. *Id.*; *see also Dole v. Bishop*, 740 F. Supp. 1221, 1224 (S.D. Miss. 1990) (concluding that the activities of two seafood restaurants were "undoubtedly similar" and thus met the "related activities" requirement); *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 915 (9th Cir. 2003) (companies that both provided home health services were engaged in related activities). Similarly in *Donovan v. Grim Hotel Co.*, the Fifth Circuit held that five corporate hotel defendants were engaged in related activities because, among other things, they were operating in the same or a similar manner and loosely operated under a common name. 747 F.2d at 970. The Fifth Circuit concluded: "By whatever analysis . . ., businesses calling themselves hotels and operating as hotels, whether their guests stay a short or long while, are engaged in related activities for the purposes of the Act." *Id.*

Here, the corporate defendants are engaged in the restaurant services business serving food to the public using the same menu, operating in the same or similar manner and advertising collectively under the name "La Condesa." (Defs' Resp. to Pls' SOF ¶¶6, 32). Although three entities are restaurants and the fourth a banquet hall, the banquet hall served food that was prepared at one or more of the affiliated restaurants. (Defs' Resp. to Pls' SOF ¶¶23, 24, 25). There is no question that the corporate defendants are engaged in related activities.

### B. The Corporate Defendants Are Under Common Control

By emphasizing the formally distinct nature of the corporate defendants and the day-to-day management of the restaurants and the banquet hall by different managers, the corporate defendants contend that they are not operated uniformly and are not under common control. (Defs' Resp. Br. at 12). Defendants assert that they are financially independent of each other and

that each defendant maintained its own bank account and does not commingle funds with any other defendants. *Id*. The corporate defendants assert that the employees at Caletilla, the banquet hall, only worked on an as needed basis unlike employees of the restaurants, and the banquet hall employees did not work at the restaurants. *Id*. The Court also recognizes that each restaurant and the banquet hall has or had their own kitchen and dining room managers. (Defs' Add'l SOF ¶17).

Again, while these facts may be true and undisputed, they are not material to the analysis of whether the corporate defendants operated uniformly or under commonly control. Common control "exists where the performance of the described activities [is] controlled by one person or by a number of persons, corporations, or other organizational units acting together." 29 C.F.R. § 779.221. " '[C]ontrol' ... includes the power to direct, restrict, regulate, govern, or administer the performance of the activities." *Id.* Courts "must look beyond formalistic corporate separation to the actual or pragmatic operation and control, whether unified or, instead, separate as to each unit." *Grim Hotel Co.*, 747 F.2d at 970.

There is no dispute that Timoteo Manjarrez is the president of all of the corporate defendants, and he and Maria have majority ownership interest in the corporate defendants. (Defs' Resp. to Pls' SOF ¶¶8, 9). Timoteo also controls the finances of each of the defendants. (Defs' Resp. to Pls' SOF ¶¶16, 17). It also is not disputed that the restaurants and banquet hall share a general manger who is responsible for the general administration and payroll for all of the defendants and the Corporate Accounting Inc. processed the payroll for all of the corporate defendants. (Defs' Resp. to Pls' SOF ¶¶19, 11, 21). Timoteo hired the kitchen and dining room managers to operate the restaurants and banquet hall. (Defs' Add'l SOF ¶17). Based on the

undisputed facts, it is clear that the corporate defendants are a loosely-connected group of restaurants and a banquet hall owned by Timoteo and Maria Manjarrez that are centrally directed and controlled.  Based on these undisputed facts, we conclude that the corporate defendants clearly have some unified operations and are under common control.

### C.  The Corporate Defendants Share A Common Business Purpose

Defendants do not specifically challenge plaintiffs' argument that they share a common business purpose. Instead, they simply argue that there are genuine issues of material facts as to the enterprise criteria.  (Defs' Resp. Br. at 12).  Courts have recognized that "a common business purpose is generally found when there are related activities and common control." *Chao*, 346 F.3d at 916; *see also Plaza Shoe Store*, 522 F.2d at 848 (citing with approval a Wage-Hour Administrator's opinion that courts have considered the satisfaction of the first two elements to suggest the satisfaction of the third, and collecting cases).

The unified operation of the restaurants and banquet hall, their similar activities, the centralization of ownership with Timoteo and Maria Manjarrez, the centralization of financial control with Timoteo Manjarrez, the centralization of accounting and administration with Adela Salazar as the general manager of all of the corporate defendants, and the use of Corporate Accounting to administer the payroll are all indicators of common business purpose.  Similarly in *Grim Hotel Co.*, the Fifth Circuit found that a family owned and operated businesses that existed for the purpose of operating a group of hotels for the profit of one family "were operating, within the meaning of the [FLSA], for a common business purpose."  747 F.2d at 971*; see also Morgan*, 625 F. Supp. at 647 (finding two restaurants that share common ownership and advertised together shared a common business purpose).  Accordingly, we conclude that the

commonly-controlled corporate defendants were operated within the meaning of the FLSA for a common business purpose.

Therefore, for all of these reasons, we find that the corporate defendants constitute a single enterprise, and plaintiffs' motion for partial summary judgment on the issue of enterprise coverage is granted.

## III. Joint Employers

Plaintiffs contend that defendants are joint employers so that they each are jointly and severally liable to plaintiffs and the class. Whether a group of companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers under 29 U.S.C. § 207 are technically separate issues. *See, e.g., Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir.1986) ("[T]he enterprise analysis is different from the analysis of who is liable under the FLSA. The finding of an enterprise is relevant only to the issue of coverage."). "[T]he concept of joint employment should be defined expansively under the FLSA." *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir.1997). However, as the court recognized in *Patel v. Wargo,* and we have not found a more recent case, "[t]here is no case holding that the individual entities which make up an enterprise should be jointly and severally liable for another entity's employees solely because they are members of the enterprise." 803 F.2d at 635.

The FLSA premises liability on an employer-employee relationship. 29 U.S.C. § 206(a). Thus, the obligation is on each employer to pay each of its employees. *Id.* There is no suggestion in the language of the statute that an employer is responsible to other employers' employees unless, of course, there is a joint employer relationship. *See* 29 C.F.R. § 791.2. The

Department of Labor regulations provide guidance as to when a joint employer relationship exists:

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reasons of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b). A determination of whether employment by a group of employers is to be considered joint employment or separate and distinct employment for purposes of the FLSA, however, depends upon all the facts in the particular case. 29 C.F.R. § 791.2(a).

Plaintiffs argue that, based on the uncontested facts, there is enough evidence in the record for us to find a joint employment relationship. (Pls' Opening Br. at 4-5; Pls' Reply at 9-11). Plaintiffs contend that it is undisputed that three employees worked consistently and commonly in the interest of all the corporate defendants: Rosa Camarena, Olivia Vertin and Adela Salazar. Each performed work for the corporate defendants doing payroll and other administrative duties in a central office on behalf of each of the defendants. (Defs' Resp. to Pls' SOF ¶19). It is undisputed that Timoteo Manjarrez hired all of the managers of the corporate defendants and issued to them uniform directives regarding their duties and responsibilities, as well as uniform directives regarding the scheduling of overtime hours. (Defs Add'l SOF ¶¶16, 17). There also is no dispute that at least two employees, plaintiff Villareal and one of the

managers Tomas Jacinto, worked for more than one of the corporate defendants at the same time. (Defs' Resp. to Pls' SOF ¶¶29, 41, 42).

Defendants, however, contend that for a joint employment relationship to exist, each alleged employer must exercise control over the working conditions of the employee. *See Moldenhauer v. Tazewell-Pekim Consolidated Communications Center*, 536 F.3d 640, 644 (7th Cir. 2008). Defendants argue that the facts here do not support a conclusion that each of the four corporations exercised "some control over the working conditions of the employees" of the other corporate defendants as is required by the *Moldenhauer* case. In *Moldenhauer*, the plaintiff employee worked as a dispatcher at the Tazewell-Pekin Consolidated Communications Center, which is a non-profit entity that provided emergency 911 communications, until her employment was terminated for excessive absenteeism resulting from a chronic medical condition. 536 F.3d at 641-642. The plaintiff sued the Communications Center, the City of Pekin and Tazewll County alleging a violation of the FMLA claiming that the Communication Center, the City of Pekin and Tazewll County were joint employers who together retaliated against her for attempting to exercise her rights under the FMLA, 29 U.S.C. § 2612. *Id*. at 641. The court declined to extend joint-employer liability to the defendants in that case because, among other things, there was no evidence that the City of Pekin and Tazewell County exhibited control over the work or working conditions of the employee at the Communications Center. *Id*. at 644-645.

Again, this a close call, but the undisputed facts relied on by plaintiffs are not enough under the circumstances of this case to find a joint employment relationship at this time. It is not clear on this record that the corporate defendants properly should be viewed as joint employers under the FLSA for the entire Class and class period. Similar to the facts in *Moldenhauer*, there

is not any evidence that, for example, defendant El Chile had any control over employees who worked at defendants Caleta, Caletilla or Roqueta. The record shows that the managers of each restaurant hired their own employees and set their schedules. (Defs' Add'l SOF ¶17).

We recognize that there certainly is some evidence suggesting a joint employment relationship. Three employees work consistently and commonly in the interest of all the corporate defendants. Rosa Camarena, Olivia Vertin and Adela Salazar each perform work for the corporate defendants doing payroll and other administrative duties in a central office that collectively and equally benefit each of the defendants. (Defs' Resp. to Pls' SOF ¶19). It also is undisputed that Timoteo Manjarrez hired all of the managers of the corporate defendants and issued uniform directives to them regarding their duties and responsibilities, as well as uniform directives prohibiting the scheduling of overtime hours. (Defs Add'l SOF ¶¶16, 17). The evidence also shows that at least two employees, plaintiff Villareal and one of the managers, Tomas Jacinto, worked for more than one of the corporate defendants at the same time. (Defs' Resp. to Pls' SOF ¶¶29, 41, 42). Clearly, there is some common operation of these defendants. With the development of more facts, plaintiffs may, in fact, be right that a joint employment exists among these defendants. However, there is not enough in the record for us to make that determination at this time as a matter of law.

Because there are disputed facts as to who had control over the working conditions of the employees and the operation of the restaurants and the banquet hall, plaintiffs' motion for partial summary judgment is denied on the issue of joint employment.

## IV. Alleged Damages

The motion filed by plaintiffs is a motion for partial summary judgment on liability only. Plaintiffs need only establish that defendants failed to compensate their employees properly for only one hour of overtime in order to establish liability. *See Estrella v. P.R. Painting Corp.*, 2009 U.S. App. LEXIS 27396, at *5 (2nd Cir. 2009). Based on the facts submitted, there is some evidence that overtime was not paid for certain employees. (Defs' Resp. to Pls' SOF ¶¶37, 40, 44). However, there are disputed facts relating to the payment of wages and alleged overtime due to other employees. In granting partial summary judgment, the Court is not resolving at this time the disputed issues regarding the appropriate damages at issue. That will be addressed, if necessary, at the next stage in this litigation.

## CONCLUSION

For all of the reasons stated on the Court's Memorandum Opinion and Order, the plaintiffs' motion for partial summary judgment [184] is granted in part and denied in part. This matter is set for status on March 22, 2011 at 10:00 a.m. to discuss the next stage in this litigation.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 9, 2011